for the appellant. Good morning, Your Honors. Blake Hannafan on behalf of Hannafan and Hannafan, the appellant. Good morning, Your Honors. Terry Campbell on behalf of the third-party We don't look at our watches in this division, but we do appreciate it if you get your strongest point first. It's an interesting area of law. But we have read the pertinent portions of the record in the briefs, so no need to recite the facts too much. Get to your arguments. Any time you're ready, Mr. Hanna. Your Honor, can I reserve time for rebuttal? I'm sorry. Yes, yes. Yes, sir, you may. Thank you, Your Honor. May it please the Court, the issue in this matter relates to the citation of Discover Assets that Hannafan and Hannafan served on the Cozzarillo's firm in an attempt to collect towards the $52,000 in change judgment that we acquired against Eric Bloom and some of his entities for failure to pay attorney's fees. The issue that's arisen here, both parties agree, is covered by the Illinois Supreme Court's decision in the Dowling case. The Dowling case acknowledges that advance payment retainers are allowable under Illinois law. However, the Dowling decision is clear that this is a unique type of contract and lays out nine specific elements that must be included in order to be a valid advance payment retainer. Are those elements etched in concrete? Yes. Do we have any authority to say that we can excuse the absence of some of them? No, Your Honor, I don't believe that's the case. Why not? Because in Dowling, the Illinois Supreme Court laid out and it says must have. For each of the nine elements, it is prefaced with must. It does not say may have these nine elements. It does not say should. It does not say these are the nine elements that should be considered. It says for each element says must be included in an advance payment retainer to be valid. However, here Katsourelis has well pleaded that they had discussions with their client and based upon these discussions, they did not want to disclose in writing matters of tactic and confidentiality. They discussed these matters, but to suit the needs of the client, they did not adhere to two of these elements. Well, Your Honor, I believe there's more than two, but to your point, under Dowling, I still believe that you have to lay out all nine in writing. One of the elements of Dowling is that it be in writing. In addition, Your Honor, with regards to the discussions that you're referencing and that it's well pled, to do that, you have to go and look at the affidavit of Eric Bloom that the Katsourelis firm submitted to Judge White in the lower court. And Dowling, Your Honor, says, specifically says that if you cannot, if you can't glean the intent of it being an advance retainer from the four corners, then the default is to a security retainer. So, Your Honor. Looking at the four corners, then, what in the four corners says that this is not an advance payment retainer? Well, Your Honor, they do. We can see they use the term advance payment retainer. But, Your Honor, if all you had to do was call it an advance payment retainer, then Dowling could have said that. Dowling didn't. Dowling said that that's one of the elements. You have to call it an advance payment retainer. But there are eight others. And, Your Honor, if all you have to do is say this is an advance payment retainer, the other eight elements that they say you must have are superfluous, and you throw them out the window. Has any other court addressed this specific issue where a, under an identical facts pattern, as was in Dowling, where a judgment creditor is trying to seize money from a law firm on an advance payment retainer to agree with you, that there are nine elements to Dowling and they must all be met, or anything like that? Well, Your Honor, not on the exact, the exact fact pattern here, because Dowling, as you know, is a fairly recent case. It's a 2007 decision. But as we cited in our briefs, in In re Mortada. A bankruptcy case, but that was different and that was an accreditor, right? That was a court citing the principle that when a lawyer wants to get paid by the bankruptcy court or from the bankruptcy estate, he's got to follow the Illinois rules. This, I suggest, is different. So as far as you know, your research has revealed no cases interpreting Dowling, not just in your manner, but in any manner, regarding what it requires. Correct, Your Honor. And I don't believe the appellee has cited any either. As I said, this is really a case of first impression here, interpreting Dowling. Counsel, can I ask a question? Yes. You argue that the must is mandatory language as far as the nine steps that have to be gone through. How do you reconcile that with the Supreme Court when they say at the end of the ruling that, while today we have recognized the validity of advance payment retainers in Illinois and have suggested how agreements establishing those retainers should be structured, the use of the word suggested by the Supreme Court, does that in any way change your argument? No. Or is it effective? I don't think it does because throughout the Dowling court, in painstaking detail, looked at the issue of were these going to be a valid type of retainer. They talk about the classic retainers, the security retainers, and then the advance payment. They looked at IBI opinions. They looked at ARDC handbook, and they lay out the nine elements on page 294 of their decision, and they're all prefaced with must. What they're doing then in Dowling, though, Your Honor, and the Illinois Supreme Court stated this, is they weren't applying those nine elements to the retainer agreement at issue in Dowling because, as they say, it wouldn't be fair to do that. Right. They specifically say this is prospective, so this is going forward. So they weren't applying that solely to the Piper-Rudnick agreement in Dowling. But in addition, there are other reasons on why this agreement between the Cotzerell's firm and Bloom should be invalidated under Dowling, in addition to not having the nine elements. And I'm happy to address all those, which are, I believe there are four which they're missing, which is they don't say where the money is going to be deposited. That's one of the elements that Dowling says. It's one of the elements that you mentioned in your reply brief that there are Supreme Court rules, which looked at Dowling and part of it was on the Rules Committee, and 1.15C lays out the five elements that the Supreme Court decided to, and again, it's five because they've merged some of these five elements that are required to, not just fit under Dowling, but that's what lawyers have to do. They have to do the five things, not the nine things, understanding that number seven and eight were, in your theory of nine, are contained in number five. But to me, more importantly, under 3D, and this is effective September 1st of this year, although one of the sentences I'm going to read has been effective forever, 3D, the type of retainer that is appropriate will depend on the circumstances of each case. The guiding principle in the choice of the type of retainer is protection of the client's interest. And in this, particularly the four corners, it says, well, I want to protect your interest. And you can see from it, this is a person, Mr. Bloom has a lot of problems. He owes a lot of money to people, including your client, you. And he's stiffed his prior law firm, your firm. And, therefore, when a new law firm, Katsourilis, gets into it, they want to be protected as well. And they want to make sure, just as in Dowling, as explained in Dowling, this is exactly the type of situation where a person, both the client, the client would really want to have an advanced payment retainer, so that other creditors won't come in and take money from his current lawyers. I mean, it's mentioned at Head Notes 11-12, 11-14, at page 293, where they talk about this. This is exactly the type of thing the client would do. This is their retainer for the client's interest. This way, he'll have money. How has the client helped, if we agree with you, that judgment creditors can seize upon these assets? Well, in this case, it's because the Katsourilis firm didn't comply with Dowling. Dowling says you have to lay out for it. They can say that they'll only represent Mr. Bloom if they do an advanced payment retainer. Dowling says that. However, it also says if that's the case, you have to explain that the law firm has to give reasons why. They don't do that. They also are supposed to explain why it is advantageous to the client. They don't do that. Well, they do that here because they say that the client is aware it's advantageous, and he's asking for it as well. They just don't put in the rationale because of confidentiality. You're right on the first one. They don't say, we're not going to take you as a client unless you come up with this money up front. And they don't say, you have a right to ask us to take it as a security retainer. Correct. And, Your Honor, they don't. But, Your Honor, for you to say that you and Judge Harris have both said that Mr. Bloom wanted this type of retainer, to get to that point, you have to read his affidavit. His affidavit should not be considered in this case, as I argued in the lower court. Dowling says you have to look at the four corners. If you have to go beyond that, it defaults to a security retainer. Well, again, the retainer agreement itself doesn't say that. As we discussed, Cotzer-Willis has determined that your interest in this matter and the nature of our practice was best served by the advanced retainer. Your interest and ours are best served by the advanced payment retainer. And so we require such payment in this engagement. Your Honor, but that violates Dowling because Dowling says that it is the client's decision alone. It's not up to the law firm. It's not up to Cotzer-Willis to say, this is our decision. They're allowed to say that we, they need to say, Dowling says that the option to do an advanced retainer needs to be made clear to the client and that it's the client's decision alone. The language of this agreement says Cotzer-Willis, Teague and Stryker has determined. It doesn't say you have the choice. Dowling says you have to give the choice. Now, I agree, Dowling allows the Cotzer-Willis firm to say, we won't represent you except on an advanced payment retainer. But then they have to explain the reasons for that. They don't do that. And with regards to this argument about Mr. Bloom wanting this type of retainer, his affidavit that they submitted contradicts the contract they have here. How does he help, though? How is Mr. Bloom? And the purpose of all this generally, as I understand being a lawyer and having clients, is it's for the benefit of the client. So in this case, and specifically in this area of retainers, it's for the benefit of the client, not a law firm. How is Mr. Bloom aided by having a security retainer, which his many judgment critters could seize upon, which would I would think would be the type of representation going forward? Well, Your Honor, I'm not blaming Mr. Bloom because Mr. Bloom didn't write this agreement. His lawyers did, and they should have written it correctly in compliance with Dowling. But one of the risks that's out there, Your Honor, in which the Illinois Supreme Court mentions, is that by doing an advance payment retainer, you're putting the funds of the client at risk to the law firm's creditors. And Dowling specifically says advance payment retainers should be used sparingly. Not all the time. Not for all criminal cases or judgment creditors. Now, I'm not going to sit here, Your Honor, and tell you that Mr. Bloom wasn't a possible candidate for an advance payment retainer. Our argument is that they did not, the Cozzaro's firm, did not comply with the nine elements of Dowling. In addition, Your Honor, another reason for calling this and applying it as a security retainer, is they violated their own terms and treated it as a security retainer. As we've stated in our briefs, and they've admitted, the contract says that the $50,000 is going to be retained and applied to the last invoice. Right, and they took $25,000. And they took $25,000 beforehand and applied it to fees and expenses that they had already incurred, which under Dowling, that's the definition of a security retainer. So not only do they violate their own terms of the agreement, but then they go and they treat it as a security retainer. They can't have it both ways. And if they're treating it as a security retainer, then it ought to be treated as a security retainer, and we ought to be able to attach those funds. They can't have their cake and eat it, too, here. Counsel, can I ask you to parse the language here? As far as the Supreme Court using the word must, couldn't they have used the word shall, and then for sure we would know it was mandatory, not maybe directory? I really don't see a difference between must and shall. There have been no cases that have construed those words differently. I haven't looked at it, Your Honor, but the way I read must in common English language is required. It's not optional. It comes up all the time, probably three times in the last two years where a Supreme Court has held that unless a statute or a rule, in this case a rule,  is merely directory. I don't have the cases in front of me. They tend to be criminal cases is where it tends to come up. But must and shall are merely directory unless there is a specific punishment or a specific sanction or a specific result required by the rule. And these rules, nor Dowling, requires any specific result for failure to obey its tenets. Well, Your Honor, with regards to another one of the elements, they don't lay out, as Dowling says, why the special purpose for having an advanced retainer. Now, again, I know they're going to argue, well, we refer to here as as we discussed. But as we discussed doesn't get it done under Dowling. Dowling says it has to be in writing. Otherwise, Your Honor, this is a slippery slope. But is it possible, agreeing with your argument, that if this was Katsourellis or rather Mr. Bloom complaining, saying, you know, I don't want them to take that $25,000. We agree they weren't going to take that $25,000. And you know what, I want a security retainer, not an advanced payment retainer. If he brought this suit instead of you, that he could raise those arguments, but you being a third-party person, you can't bring them because you're not supposed to be protected by this. Is that conceivable? I don't think so, Your Honor. They can't just pick and choose the elements they want to comply with. Otherwise, Dowling is going to be turned on its head, and you can end up having an advanced payment retainer in which the lawyers write to a client and say, we're entering into an advanced payment retainer. As we discussed, there are reasons for doing this. Sign here. I don't think that would pass muster under Dowling. But they want to say, well, it's just intent, and all you have to say is intent to enter into an advanced retainer. Then you end up with fee agreements, advanced payment retainers, in which clients are being handed a letter that says, you know, sign here, and it says we really, really, really, really intend to enter into an advanced payment retainer. And that's going to satisfy Dowling. I don't think that's what's expected. And as I said, Dowling makes it clear that this is a unique type of contract. This isn't run-of-the-mill. It should be used sparingly, and it has specific elements that must be in there. In addition, Your Honor, as I pointed out, there are contradictions in Mr. Bloom's affidavit and the fee contract. And I'd like to point out just a few of them. In particular, Mr. Bloom states that paragraph three of his affidavit that was submitted states, initially, the Cozzarillos Law Firm prepared and presented to me a security retainer letter agreement. But don't you argue we shouldn't consider it? Let's assume you won that argument. Well, it's been made part of the record, but it goes to show the inconsistencies in the credibility here. Because he says he was initially provided with this, and he goes on to say that, no, no, it was his idea, and he wanted an advanced payment retainer. But when you look, Your Honor, when you look at their fee agreement, they claim that they're going to, that they say has determined your interests are best served, and we require such a payment. They contradict that. Mr. Bloom says, initially, I was given a security retainer. So Cozzarillos was willing to do it that way, but, oh, well, gee, I talked to my dad, and I've decided I want this advanced payment retainer. But Cozzarillos says, we require it. It's inconsistent because Judge White in the lower court and Mr. Campbell in the Cozzarillos Firm argued that the intent of the agreement, they brought in the affidavit, and they argued at length to the lower court that Judge White should read the affidavit of Mr. Bloom to see the intent of the agreement. So they were going beyond the four corners. I think if they're straight with themselves, they realize they don't have all the elements of Dowling in this letter. They violated its terms, and then they've submitted materials outside of that to try to justify that the intent of all the parties was to have an advanced payment retainer. I'll give you five minutes or so for reply after we hear from Mr. Campbell. Thank you, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, Counsel. I think there are two cornerstones to the issue that is presented today. One is, what was the intent of the parties to this contract? And two, was an advanced payment retainer in the interest of the client, Eric Bloom? And there is, I think, no doubt, no question, that the intent of the parties to this contract was to form an advanced payment retainer agreement. I would suggest that this Court need only take three minutes to read the agreement and can see from the four corners of that document that the intent of the parties is clear. It is also clear, based on the circumstances of this case, that it is in the interest, it was in the interest of Eric Bloom to have an advanced payment retainer. The law that we have cited is absolutely clear. It's black-letter law. It's been around forever. And it was the cornerstone of the Dowling decision. That is, that in contract interpretation, the intent of the parties to the contract governs. And so we were criticized for having cited case law that spanned over 100 years for that proposition. But this Court can look at all those cases. But it can also look just at Dowling, because what Dowling says is, quote, when construing a contract, the Court's primary objective is to give effect to the intent of the parties as revealed by the language they used in their agreement. That's from Dowling. Dowling also says a contract should be given a fair and reasonable construction based upon all of its provisions read as a whole. And Dowling also ñ What standards do we get from Dowling, then? What use is that case, then? The other things you've cited are pretty well-known contract law. But what do we get from Dowling? Do we just disregard it? No, certainly not disregard it. In fact, I think as we've made clear, virtually all of the factors that are articulated in Dowling, that it suggests that lawyers put into these agreements, are contained in this agreement. And I'll ñ I'm happy to go through those. The clear import of Dowling is it has to be clear that you are entering into an advance payment retainer agreement. So Dowling says, look, you ought to have in there a number of things that make clear to the client what kind of retainer this is, what other possibilities there are for the retainer, that ownership passes immediately, how those funds are going to be handled, all those things to make sure that everyone's on the same page. That's the import of Dowling. But how many of those criteria need to be in there? Which is it? Can you just title the document and have it in writing and nothing else? Where do we go with this? Yeah, I think the answer is enough. There has to be enough. You have to use some reason here. So it cannot be ñ and Dowling certainly doesn't say this agreement has to contain these precise words. If it did, there'd be a form agreement and it would say you have to use this agreement in this precise language. What Dowling says is make sure that everyone understands what this agreement is and what it means and how the funds are going to be handled. And so we do that in the agreement. I think if you had a situation where all it said was this is an advance payment retainer. Okay, sign it. Probably not enough. That's not the case here. I mean, let's take a look at what we have in here. Dowling says you've got to use the term advance payment retainer. That's used. It's used five or six times in this agreement. Dowling says that the agreement has to be set forth in writing. Of course, it is set forth in writing. Dowling says you have to notify the client of the nature of an advance payment retainer. What we told Mr. Bloom in writing in paragraph three of the agreement is, quote, an advance payment retainer is recognized and approved under Illinois law as a present payment by you to us as your attorneys in exchange for our commitment to provide legal services to you. Ownership of this sum passes to our firm immediately upon receipt of your advance payment retainer, and therefore the funds will not be held in a client trust account. Well, they concede one through four and essentially six. What they fight about is their belief that number five, where it will be deposited, is still the law, which I'd suggest is not under the rules. But they're hanging their hat, it seems to me, on number seven and eight, which is contained in rule subset five of the rule. How is it that you met the requirement that the client has the written agreement now, has to show that the client has the option to employ a security retainer, provided, however, that if the lawyer is unwilling to represent the client without receiving an advance payment retainer, the agreement must so state and provide the lawyer's reasons for that condition? Yeah, and I think we do, and here's how. So there are two possibilities there. So it says in part one, look, you have to tell the client that there's an option to have a security retainer, as opposed to an advance payment retainer, and then it says, provided, however, if you require an advance payment retainer, you can tell that to the client. You can put that in writing. And so what do we do? I would suggest that if you are requiring an advance payment retainer, you don't have to explain to the client what a security retainer is. You don't have to mention it. You can say, because Dowling says provided, however, if you require it, tell them you require it. Here's what we did. We said Illinois law permits other forms of retainer, such as a security retainer, in which a client prepays an amount which remains the client's property, but that must be held in trust by your attorney until it is applied towards fees. So did we tell them about the option of a security retainer? Absolutely. And then we go on to say, as we discussed, Cozzarella's tie-in striker has determined that your interests in this matter and the nature of our practice are best served by the advance payment retainer, and so we require such payment in this engagement. We satisfied those requirements in writing in paragraph 3 of that agreement. The language is plain on its face. And so what is the complaint here? The complaint, and really the only complaint, is we didn't go into enough detail to satisfy the Hannafan Law Firm of the specific, particular facts of Mr. Bloom's case in our retainer agreement. We certainly say, as we discussed, we certainly talk about the fact that there is a criminal investigation, there is an ongoing grand jury investigation, we certainly talk about the fact that there are two federal regulatory cases going on. We talk about that. It's in the first paragraph of this retainer agreement. And then we say, as we discussed, what Hannafan says is, well, it's not enough detail. Not enough detail for them. Now, Dowland doesn't say you have to put in all the particulars of why you're entering into an advance payment retainer agreement. It says you have to say it. We said it. We said the reasons why. And I have to tell you, the kinds of cases that our firm handles on a regular basis oftentimes involve very sensitive, very confidential information, and we have been subject to grand jury subpoena seeking retainer agreements or billing statements. And so you have to be careful about what kind of confidential information you put into those things. So did we put in enough to satisfy that problem? Given that we satisfied all other seven or eight requirements, depending on how you look at it, did we put enough in to say here's the reasons why when we referenced the grand jury investigation, when we referenced the regulatory investigations, and when we referenced the fact that we had discussed this issue with the client, when we put this agreement before him and he has the option to sign it or not, when we tell him that there is an option for a security retainer, when we tell him that we're going to require an advance payment retainer, when we tell him how the funds are going to be handled, that ownership passes to us, when we use that term, no one reading this agreement could say that the intent of the parties was anything other than to enter into an advance payment retainer agreement. HANIFAN never argued that. They never argued that. And I don't think they could get up here with a straight face and say read this agreement and actually they didn't intend to have an advance payment retainer agreement. And when we get back to the fundamental point here, the fundamental point is this is a contract. You have to give effect to the intent of the parties. And you cannot read an agreement to be exactly the opposite of what it is clear the The law is clear on that. We cited any number of cases in our brief that say precisely that. The lower court found that the intent of the parties was clear. The lower court found that the intent of the parties should be given effect. That is what the law demands. That is what Dowling demands. And that is what this Court should order in this case. Thank you. Mr. Hanifan, briefly. Thank you. A few points. With regard to Mr. Campbell's argument that Dowling quotes that the intent is the primary objective, he's trumpeted that a lot. And, again, Dowling is a unique type of contract, and the language he quotes from Why is it unique? I mean, I was a prosecutor before I got up here 15 years ago, but I think any attorney that was taking on a guy that was, frankly, obviously a deadbeat of some kind, he's judgment creditors, let's be polite about it, you better get some money up front. And then our rules on that with the ARDC and the Client Trusted Account Handbook are very strict. And you lose your ticket for not following the rules. So I would think this happens every day, up and down the street, thousands of times a week. It's unique, Your Honor, because for precisely that reason, they want to use the Cotzer-Willis firm wants to use an advance payment retainer to ensure that they're getting money up front and that it's not going to be seized by a legitimate judgment creditor like us or the government because the guy is a deadbeat and a crook. And the client wants to try to protect it because he's a deadbeat and a crook. And you see lawyers going forward. However, there shouldn't be a way for the Cotzer-Willis firm and Mr. Bloom to take advantage of this type of protection and not follow the rules. It's very simple. The Cotzer-Willis firm, one of the requirements is to say what the special purpose is and the advantages. You know, Mr. Campbell says, oh, these confidential, high, you know, secret conversations. Well, they submitted a three-page affidavit from Mr. Bloom in the lower court. So apparently they weren't that concerned about these conversations they allegedly had with him when they're trying to keep us from getting the 25 grand that are owed to us. Then they're okay with him singing like a canary. They submit that in an affidavit. So this idea about secret confidential conversations, I think, is a bunch of baloney. But they want to be able to try to protect this money all they had to do, Your Honor. They could have written into this agreement, very simple, to say that the special purpose is to protect money from potential judgment creditors or the government for forfeiture. It's plain and simple. They could have said that. And that would be okay? They could say the special purpose is to protect your assets and to ensure that you are able to retain counsel going forward because the funds could otherwise be subject to a judgment credit or a forfeiture. That's not, they need to say, you know, could it be more self-evident? If they had an admonition in there that they wanted to avoid government forfeiture, wouldn't that be an obstruction of justice? I don't think so, Your Honor. If that's their own issues, why would they want that in there? Why would Bloom want that in there? Because the Dowling Court, Your Honor, specifically states that there are, again, to be used sparingly, and that there are unique circumstances, and they refer to in cases of government forfeiture and judgment creditors. So the Illinois Supreme Court has acknowledged that there are types when that is something to ensure that a client can have competent counsel going forward. Well, I can well understand why Katsourelis and Bloom would not want that set forth in the contract. And this case would certainly be different in interpreting Dowling if it were Bloom before us complaining that the document didn't serve his interests. But you come here now as a judgment creditor. That alters the bias and the view that we're going to give Katsourelis. I'm not going to give the Dowling case. But, Your Honor, I believe, though, if they want to use this as a shield, to shield this money, which is exactly what they're trying to do — Don't they have the right to do that? Then they need — Don't they have the right to do that? Yes, but they need to comply with the nine elements required in Dowling. They can't pick and choose. And, Your Honor, Mr. Bloom's affidavit they submitted talks about government forfeiture. So, again, they can't have it both ways and say this isn't something we'd want out in the public, and then they draft an affidavit for him to submit when they decide it suits their needs. And with regards to the intent issue in Dowling that they quote, Mr. Campbell doesn't point out that that is when the court says in Section 3, we now turn to the question of whether the $100,000 retainer paid to Piper. They're turning their attention to the contracted issue in the Dowling case, in which they said they're not going to apply the nine elements because it would be unfair. So what did they have to do? They had to go back to the old way to look at it. That's when they cite on page 295 and 296. They say they're turning their attention. Then they quote about looking at the primary intent, primary objective being intent. But, as I said, in order to use this as a shield to protect this $25,000, the Casarillo's firm should be held to the standard established by Dowling and comply with it. They shouldn't be able to pick and choose. Otherwise, you've got a slippery slope, and I believe Dowling lays out the nine required elements. And unless Your Honors have any questions. Thank you. I appreciate it. Thank you for the arguments and the briefs. This case will be taken under advisement, and this court will be adjourned. Thank you.